Abraham J. Halprin v. Commissioner.
Halprin v. Commissioner
Docket No. 5626.
United States Tax Court
1945 Tax Ct. Memo LEXIS 116; 4 T.C.M. (CCH) 789; T.C.M. (RIA) 45254; July 23, 1945
*116 Abraham J. Halprin, pro se. Clay C. Holmes, Esq., for the respondent. SMITH Memoradum Opinion SMITH, Judge: This proceeding involves a deficiency of $3,380.43 in petitioner's income tax for 1941. The only issue is whether petitioner is entitled to the deduction in his individual income tax return for 1941 of an operating loss from rental properties which during that year were held by a wholly owned corporation. There is no dispute as to the facts. [The Facts] Petitioner is a practicing attorney with offices at 170 Broadway, New York City. He filed his Federal income tax return for 1941 with the collector of internal revenue for the second district of New York. On December 4, 1939, petitioner made a loan of $10,000 to Glickfreed Realty Corporation on security of a third mortgage covering premises 172-41 Hillside Avenue, Jamaica, New York. Later, to protect his loan, he purchased the second mortgage on the property for $21,000. That left outstanding a first mortgage in the amount of $45,000. On September 9, 1939, petitioner made a loan of $10,000 to Draymeera Corporation secured by a third mortgage on premises 144-01 to 19A Northern Boulevard and Parsons *117 Boulevard, Flushing, New York. Later on petitioner made another loan to Draymeera Corporation of $15,000 secured by a fourth mortgage on the same property. Both the Jamaica and Flushing properties were rental properties on which buildings had recently been constructed. The builder became financially involved and on January 11, 1940, petitioner commenced foreclosure proceedings on both properties. The Jamaica property was sold at public auction on June 13, 1940, and the Flushing property on June 19, 1940. Both properties were bid in by petitioner for the nominal amount of $500 each to cover the costs of the foreclosure sales. During pendency of the foreclosure proceedings petitioner purchased the second mortgage on the Flushing property in the amount of $40,000. After bidding in the properties at the public sales petitioner assigned his bids to a corporation, the Flushing Jamaica Corporation, which he had organized under the laws of the State of New York on June 14, 1940. Both properties were deeded to the corporation in that year and prior to July 10 without consideration. Those deeds were duly recorded. On July 10, 1940, the Flushing Jamaica Corporation executed a warranty *118 deed purporting to convey both properties back to petitioner. That deed, however, was not recorded until several years later. Petitioner organized the Flushing Jamaica Corporation for the sole purpose of holding legal title to the Flushing and Jamaica properties so as to avoid personal liability on the mortgages that would have to be given in arranging permanent financing on the properties. The Jamaica property was permanently financed with the Excelsior Savings Bank on July 3, 1940, and the Flushing property with the East New York Savings Bank on December 10, 1943. Both of the mortgage agreements were executed by petitioner as president of the Flushing Jamaica Corporation. On September 15, 1943, petitioner recorded his deed to the properties from Flushing Jamaica Corporation dated July 10, 1940. Soon thereafter and before the close of 1943 he dissolved the corporation. The Flushing Jamaica Corporation never issued any certificates for shares of stock, never had any employees, never had a bank account, and never had any capital other than title to the above described real estate. No meeting of directors or stockholders was ever held and no business was transacted in the name *119 of the corporation except what was done in connection with the mortgages, taxes, insurance, etc. Those matters were all handled by petitioner individually in the name of the corporation. The properties were rented for the period during which they were held by the corporation and were managed by petitioner through a real estate agent. All of the rents were deposited in petitioner's personal bank account and all expenses were paid by petitioner from checks drawn on that account. The rental operations resulted in a net loss of $4,821.82 for the taxable year 1941 and petitioner claimed the deduction of that amount as a loss in his individual return for that year. For 1942 there was a net gain of $250.71 which petitioner reported in his return for that year. The respondent has disallowed the loss deduction claimed by the petitioner on the operation of the properties in 1941 on the ground that the loss was that of Flushing Jamaica Corporation, a separate tax entity, and was therefore not allowable to petitioner individually. Petitioner contends that Flushing Jamaica Corporation should not be recognized as a taxable entity. He states, as a legal basis for this contention, that: A corporate *120 entity, doing no business, but holding a mere naked, record, legal title, and acting as a conduit for a sole stockholder, who has equitable title and sole command over its property, will be disregarded, in tax cases and otherwise, when not formed to evade the payment of taxes, but to accomplish a legal end. Petitioner makes no contention that the deed which he executed as president of the corporation on July 10, 1940, purporting to convey both properties back to himself as an individual was effective for that purpose until it was recorded in September, 1943. The evidence shows, we think, that this deed was not given with the intention of making a present transfer of the properties. Such a transfer would have defeated the very purpose, and the only purpose, which the corporation was intended to serve; that is, to hold legal title to the properties until petitioner could arrange permanent financing for them. In his opening statement petitioner described this transaction as follows: At the same time that a deed was received from the referee [to the corporation] I had the corporation draw a deed to me individually, which I did not use until I obtained permanent financing on both *121 properties. On the day that I financed the second property the deed went on record. We think that the parties have rightly assumed in the presentation of the case that Flushing Jamaica Corporation held legal title to the properties in the taxable year 1941. As a general rule every corporation is treated as a separate taxable entity distinct from its shareholders. ; ; ; . In , the Supreme Court said: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. ; *122 * * * , * * *. In , * * * this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to its stockholder. This was because the taxpayer had adopted the corporate form for purposes of his own. The choice of the advantages of incorporation to do business, it was held, required the acceptance of the tax disadvantages. The court's ruling in that case seems to us to be controlling here. Petitioner organized the Flushing Jamaica Corporation for the particular purpose of holding legal title to the real estate which he had purchased at public sales until he could arrange permanent financing for the properties. Mortgages in substantial amounts were placed on the properties while they were held by the corporation and the corporation, acting through petitioner as its president, was a party to the mortgage contracts. That, we think, was "the equivalent of business activity" to use the court's language in the Moline Properties, Inc. case, supra. Although the corporate structure of Flushing Jamaica Corporation *123 was never completed (no certificates for shares of stock were ever issued) and it never functioned as an ordinary business corporation, yet it had sufficient substance to serve the purpose for which it was created. Since that purpose was real and legitimate the corporation could in no sense be termed a "sham" as in . Petitioner's contention that the corporation had no existence as a separate tax entity puts him in the position of claiming that he had a right to elect whether to recognize the corporation or not as best served his own interests. That prerogative, if it exists at all, is one that belongs to the Commissioner and not to the taxpayer. . The court said in that case: * * * A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages. On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed *124 for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property. The Commissioner has determined here that Flushing Jamaica Corporation should be recognized as a separate taxable entity and we think that he must be sustained in that determination. The facts here are much like those in , decided July 2, 1945. That case involved two corporations which the taxpayers had organized to hold title to separate parcels of real estate. One of those corporations was entirely passive and did nothing more than hold the legal title which was assigned to it. The other corporation, known as Raymep Realty Corporation, engaged in limited activities very much like those of the Flushing Jamaica Corporation in the instant case. This Court held in a Memorandum Opinion that both of the corporations *125 should be recognized as tax entities. The court sustained as to Raymep Realty Corporation but reversed as to the other. Its opinion reads in part as follows: The petitioners now contend that Raymep and Westrich were mere "dummies" which held the legal title to property owned by the two individual petitioners and that both corporations are to be disregarded for income tax purposes. As a general rule a corporation is a taxpayer separate and distinct from its stockholders. . And this applies to a corporation wholly owned by one stockholder. . But there are exceptions and the corporate form will be disregarded where it serves no business purpose and is but a sham. . So, too, a taxpayer may gain the advantage of doing his own business through a wholly owned corporation if he pleases, but the treasury may disregard the separate corporate entity where it serves but as a shield against taxation and treat the one who actually may take the benefit of the income as the owner of the property which produces it and tax him accordingly. *126 . Yet the treasury may treat a corporation as a separate taxable entity when its organization "is followed by the carrying on of business by the corporation." . We think that Raymep was active enough to justify holding that it did engage in business in 1938. The absence of books, records and offices and the failure to hold corporate meetings are not decisive on that question. Though Raymep was organized solely to deter creditors of one of the partners, it apparently was impossible or impracticable to use it solely for that purpose when it became necessary or desirable to secure the above mentioned loan in a substantial amount. There was, to be sure, less business activity than was shown in , but we think enough did appear to make the principles applied in that case applicable to Raymep and that the decision of the Tax Court should be affirmed as to the taxability of that corporation. Compare, ; , *127 and . Westrich, however, was at all times but a passive dummy which did nothing but take and hold the title to the real estate conveyed to it. It served no business purpose in connection with the property and was intended to serve only as a blind to deter the creditors of one of the partners. It was but a sham to be disregarded for tax purposes. See, also, 112 ; and . The facts here, we think, bring this case within the rule which the court applied to the Raymep Realty Corporation. The respondent's determination that petitioner is not entitled to deduct the loss resulting from the operation of the properties in question in his individual return for 1941 is sustained. Decision will be entered for the respondent.